[Civ. No. 1008. Fourth Appellate District.—April 6, 1933.]

MARY E. CONNELLY, Appellant, v. J. D. MILLAR REALTY COMPANY (a Corporation) et al., Defendants; MELINE BOND & MORTGAGE COMPANY (a Corporation) et al., Respondents.

Sherman & Sherman and Glenn M. Still for Appellant.

Hewicker & Kearney for Respondents.

VAN ZANTE, J., *pro tem.*—This action was brought by plaintiff to rescind a contract and to quiet title to a certain lot in the city of Los Angeles. The default of the defendant Fred S. O'Neill was entered and the action was dismissed as to defendants J. D. Millar Realty Company, J. A. Ross, Security Trust and Savings Bank and Security First National Bank.

Judgment was rendered in favor of the defendants on their answer and in favor of defendant Meline Bond & Mortgage Company on its cross-complaint to quiet title to and for possession of the same lot.

Plaintiff's contentions that the judgment as rendered should be reversed are set forth in his opening brief as follows:

"Appellant contends and alleges as grounds of error and as sustaining a reversal the following theories:

"(a) That defendants and respondents, through their duly authorized servants, agents and/or employees had notice and knowledge of the open, exclusive, and notorious possession of the said property by appellant herein at 2438–2440 Mansfield Avenue, Los Angeles, California, at all times herein mentioned, and that any rights of defendants and respondents in placing an incumbrance upon said property with knowledge of these facts are subservient and secondary to those of appellant.

"(b) That the evidence is insufficient to justify or sustain the findings of fact and conclusions of law."

It appears in the record, and is not disputed, that plaintiff was in possession of this property at the time in question. It also appears in the record that while the plaintiff was so in possession she executed and delivered to defendant Fred S. O'Neill a grant deed conveying this property to him; that while this grant deed recited a consideration of ten dollars, the real consideration was $1,000 and two lots in the Hollywood Sunnyside tract; that plaintiff received only $600, and the two lots have not been conveyed to her; that after recording his grant deed defendant O'Neill borrowed the sum of $3,500 from defendant Meline Bond & Mortgage Company and executed to that company his promissory note for that sum and secured same by executing a trust deed conveying this property to defendant Title Insurance and Trust Company as trustee and defendant Meline Bond & Mortgage Company as beneficiary.

Plaintiff contends that her possession of the property in question was notice to the world that she claimed such an interest as would place any person dealing with the property upon inquiry to ascertain the character of her claim.

We find in the record an exhibit which reads as follows:

"July 28th, 1928.

"TO WHOM IT MAY CONCERN.

"This is to certify that I, Mary E. Connelly, being of sound mind and health, have traded my house and lot on Mansfield Street in the city of Los Angeles, for the corner of Sepulveda Blvd. and Nome Street in Hollywood Sunnyside tract, without duress being brought to bear, and that I have made this trade of my own free will and accord.

"I further affirm that I am making this deal, allowing the O'Neill organization sixty days to deliver to me deeds to the lots above mentioned, and without putting this trade through escrow for at least sixty days. This being done in order to permit them to mortgage the property, in order that they may pay me $500.00 Cash, and then within sixty days I am to receive a further $500.00, making a total of One thousand dollars to be paid to me, and I am also to receive my deeds at the expiration of the sixty days. I agree that I will not at any time perform any action that will embarrass you in the negotiations.

"Signed in the presence of "MARY E. CONNELLY.

"J. L. PHILLIPS."

 We think the plaintiff is estopped from asserting any rights as against the trustee and beneficiary named in the trust deed which was executed subsequent to the execution of the above instrument. There is other substantial evidence in the record supporting the findings as made by the trial court. And while there is also substantial evidence in the record supporting plaintiff's theory of the case, findings based upon substantially conflicting evidence cannot be disturbed by an appellate court. This rule is too well established to require citation of authorities.

 Plaintiff also claims a vendor's lien. This claim is inconsistent in an action for rescission of contract, and cannot be maintained. It appears in the record that subsequent to the institution of this action she filed a complaint to enforce a vendor's lien.

"The lien which the vendor of real property retains, after an actual conveyance, for the unpaid purchase-money, is not a specific and absolute charge upon the land, but a mere equitable right to resort to it upon failure of payment by

the vendee. (*Sparks* v. *Hess,* 15 Cal. 186.) It is in its nature a personal privilege, unassignable, which the vendor can assert, only in a suit brought for the purpose of having it decreed and enforced.'' (*Fitzell* v. *Leaky,* 72 Cal. 477, 484 [14 Pac. 198, 201].)

''The two causes of action rest upon different and inconsistent theories—the first upon the theory that the contract between the parties is terminated, the plaintiff electing upon defendant's repudiation to treat the contract as rescinded and to bring action for the money he has advanced as being money for which he has received no consideration; the second, upon the theory that the contract is still in force, the plaintiff electing not to acquiesce in a rescission and to maintain an action on the contract for damages for the breach. It is thoroughly settled in this state that a party to a contract may pursue either of these courses, but that he may not recover on both.'' (*House* v. *Piercy,* 181 Cal. 247, 251 [183 Pac. 807].)

''The true principle is well stated in *Whitney* v. *Allaire,* 1 N. Y. 305, as follows: 'It is true that if a party affirms a contract with knowledge of the fraud he affirms it wholly, and this, whether it is executory or partially executed. But in neither case does he affirm it as a contract made in good faith. He consents to be bound by the provisions of the agreement, but does not thereby release or waive his claim for damages arising from a fraud collateral to the agreement.' That but one of these two courses and none other is open to a vendee under an executory contract, whether the vendor's wrong rests in fraud or breach of warranty, is not debatable under the authorities elsewhere as well as in this state. (*Gates* v. *McLean,* 70 Cal. 42 [11 Pac. 489]; *Worley* v. *Nethercott,* 91 Cal. 517 [27 Pac. 767, 25 Am. St. Rep. 209]; *Garvey* v. *Lashells,* 151 Cal. 526 [91 Pac. 498].)

''As it is humanly impossible for a man in the same breath to affirm and to repudiate an agreement, so is it legally impossible that he should have the same redress upon repudiation and rescission as upon acceptance and complete execution.'' (*Hines* v. *Brode,* 168 Cal. 507, 512 [143 Pac. 729, 731].) See, also, *Ruhl* v. *Mott,* 120 Cal. 668 [53 Pac. 304].

Judgment is affirmed.

Barnard, P. J., and Marks, J., concurred.