[L. A. No. 2969. Department One.—January 11, 1913.]

HARRY GRAY, Respondent, v. GEORGE B. ELLIS and NORMAN W. CHURCH, Copartners doing business under the firm name of Ellis & Church, and THE NORTHERN INVESTMENT COMPANY (a Corporation), Appellants.

CORPORATIONS—SUBSCRIPTION TO STOCK IN PARTICULAR CORPORATION—APPLICATION TO STOCK IN DIFFERENT COMPANY—LIABILITY TO REFUND.—Where an agent authorized to obtain subscriptions to the capital stock of two different corporations, diverts money specifically paid him for a subscription to the original stock of one of such corporations, and attempts to apply it for a subscription to the stock

of the other, and the money is so received and applied by the other, both the agent and the corporation obtaining the money, although it may have had no knowledge of the terms on which the agent received it, are liable to refund it to the payer, as for money had and received to his use, if it was impossible to apply the money on account of a subscription for the stock of the intended corporation, due to the fact that all of the stock of that company had been subscribed for prior to the date of the payer's subscription.

ID.—CORPORATIONS OF SAME CHARACTER AND HAVING PROPERTY OF SAME VALUE.—It is immaterial to the right to recover such money that there was no difference in the value of the stock of the two companies, and that the property of one corporation was the same in character and value as that of the other.

ID.—INSTRUCTIONS REQUESTED BY APPELLANT.—The appellants cannot complain of instructions to the jury, which left them to determine whether under the subscription agreement the payers of the money had the right to elect which stock his money was to be applied on, if they joined in requesting instructions to that effect.

ID.—ORIGINAL SUBSCRIPTION TO STOCK—ACCEPTANCE OF STOCK ALREADY ISSUED.—One who has contracted to take stock in a company as an original subscriber thereto, cannot be compelled to accept from others, in satisfaction of his rights under such contract, any stock that had been subscribed for by, and issued to, other persons, and that was then owned by other persons.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. Leon F. Moss, Judge.

The facts are stated in the opinion of the court.

Denis & Loewenthal, for Appellants Ellis & Church.

Thomas O. Toland, Cedric E. Johnson, and T. F. Welch, for Appellant Northern Investment Company.

Hatch & Lloyd, Hatch, Lloyd & Hunt, and Harvey D. Cheney, for Respondent.

THE COURT.—This is an appeal from a judgment in favor of plaintiff, and from an order denying defendant's motion for a new trial. The case was tried with a jury, which rendered a verdict in favor of plaintiff for the full amount claimed.

The action is one to recover $2,250 paid by plaintiff to Ellis & Church on account of a subscription for the purchase of certain corporate stock, which money, it is substantially alleged, was diverted by Ellis & Church to payment on account of a subscription for stock in another and a different corporation from the one for whose stock he had subscribed, viz., the defendant Northern Investment Company, which diversion he promptly repudiated. The memorandum of agreement for such purchase executed by plaintiff is set forth in the complaint, the same being as follows:

"We, the undersigned, hereby severally agree to pay to Ellis & Church, agents, the sums set after our names respectively, on the following terms and conditions:

"Fifteen per cent (15%) in cash, and the balance as called for, being payments on account of purchase of stock of the Northern or Western Trust Companies, said Northern or Western Trust Companies' stock representing bonds and stock of the Home Telephone Company of San Francisco:

| Names. | Amounts to be paid. |
| --- | --- |
| S. W. Clark | $ 3,000 |
| C. C. Ames | 15,000 |
| F. C. Hornby | 35,000 |
| H. H. Barstin | 10,000 |
| Harry Gray | 15,000 |
| By H. D. L. | |
| John T. Bill | 5,000" |

Treating this contract as giving the plaintiff the right to elect or direct to which of the two corporations referred to his subscription should be made (the "Northern" or "Northern Trust Company" referred to therein being the defendant Northern Investment Company), it was alleged in the complaint that at the time of the payment of the money, plaintiff elected and directed that the same should be applied upon the purchase of stock in the Western Trust Company, and that said election and choice was agreed to and acquiesced in by said Ellis & Church, they so acknowledging in their receipt given for such money. It is further substantially alleged that Ellis & Church paid said money to the Northern Investment Company, on account of a subscription by plaintiff for stock of the last-named company, said company receiving the same and sending plaintiff a certificate for one hundred and fifty

shares therein, which he at once returned, repudiating the action of Ellis & Church in the matter, and declining to be considered a subscriber for any stock of said corporation. Defendant Northern Investment Company has ever since retained plaintiff's money, insisting that it is entitled to retain the same as on account of a subscription for its stock. It is further alleged that Ellis & Church have steadily refused to apply said money on account of a subscription for Western Trust Company's stock. We think the allegations of the complaint sufficiently show that Ellis & Church were the agents of both corporations in the matter. The answer clearly and definitely acknowledges that they were the agents of both corporations for the sale of the stock thereof, and that they were soliciting and receiving subscriptions from the public at large for the stock of both corporations, and for such subscription purposes were circulating agreements in the form set out in the complaint. It further appears from the answer and from the evidence that said corporations were formed solely to purchase and hold certain stocks and bonds of the Home Telephone Company of San Francisco, and the stock of both was of precisely equal value, share for share, and was based upon the said assets, to wit, stocks and bonds of said Home Telephone Company, and nothing else, and each share of stock of the Northern Investment Company represented the same number of stocks and bonds of said telephone company, as did each share of stock of the Western Trust Company. The only differences appear from the evidence to have been that the principal place of business of the Western Trust Company was the city of Los Angeles, while that of the Northern Investment Company was San Francisco, and that the officers of the two corporations, with the exception of the president, were different, the same person being president of each corporation.

The theory of plaintiff's complaint may fairly be said to be that both defendants are liable to him as for money had and received to his use. The money paid by him for a subscription for stock in one corporation to the agents of such corporation having been diverted by such agents to another corporation of which they were also agents, and attempted to be applied by such other corporation for and on account of a subscription for its own stock, he seeks to recover the amount

thereof on the ground that the law implies a promise on the part of both Ellis and Church and the Northern Investment Company to refund it.

If there was an unauthorized diversion of this money to the Northern Investment Company by Ellis & Church, its agents, we see no reason to doubt the liability of such corporation on this theory, regardless of whether or not it had knowledge at the time it received the money of the terms on which Ellis & Church received the money from plaintiff. It cannot profit by reason of the unauthorized act of its own agents in the matter of obtaining subscriptions for its stock, and must be held to hold plaintiff's money without right and under an implied promise to repay the same. And, of course, if Ellis & Church have devoted plaintiff's money to a purpose not authorized by him, they are liable therefor upon the same theory. All this is certainly true if, as the evidence shows without conflict, it is no longer possible to apply the money on account of a subscription for stock of the Western Trust Company, all of the stock of said company having been subscribed for prior to the date of plaintiff's subscription, and plaintiff's subscription clearly being solely for original stock.

We think that the amended complaint sufficiently states a cause of action against both defendants on the theory we have stated, and that the demurrers thereto were properly overruled. The various counts in which plaintiff has attempted to state his case, there being four, are not materially different in their effect, the allegations of the first count being made a part of each of the others.

It is obvious that it is no answer to plaintiff's claim, if in fact his contention as to an unauthorized application of his money is sustained, that there was no difference in the value of the stock of the two companies, and that the property of one corporation was the same in character and value as that of the other. Plaintiff had a perfect right to insist that his subscription, if he made one, should be for the stock of one corporation rather than the other, and that his money under no circumstances should be devoted to the purposes of a subscription for the stock of such other corporation. It may be that we can see no good reason why he should prefer one to the other, but that is no concern of the courts or of any one other than himself.

The memorandum of agreement did not clearly indicate who was to determine in which corporation, the Western Trust Company or the Northern Investment Company, plaintiff's subscription was to be placed, whether the matter was left to the discretion of Ellis & Church, or their principals, or was to be subsequently determined by plaintiff. Plaintiff's claim is that he had the right to determine this matter, and his evidence is squarely to the effect that when he paid the $2,250 he directed that it be applied upon the purchase of stock in the Western Trust Company, and that this election and determination was agreed to and acquiesced in by Ellis & Church. The receipt given by them to plaintiff at said time indicates by its recitals that such was the case. There can be no doubt that there was sufficient evidence to support a conclusion that there was such an election and direction on the part of plaintiff, and that Ellis & Church agreed thereto and received the money with such an understanding.

The question whether the written agreement gave to plaintiff the right to elect which stock his money was to be applied on was left to the jury by the instructions. It is urged that there was no such uncertainty as to make this a question for the jury, and that the court should have determined, as matter of law, what the agreement meant in this respect. We may so concede for all the purposes of this decision. The difficulty with defendants' position in this regard is that they joined in requesting instructions to the effect stated. For instance, one of their requested instructions, which was given, was in part as follows: ''You must then determine from the evidence whether the subscription of Mr. Gray to the stock of the Northern Investment Company or Western Trust Company meant that he was to choose the company in which the stock was to be purchased, or whether the defendants Ellis & Church had a right to put him as a subscriber in either of said companies as they might elect.'' Another of defendants' requested instructions, also given, was in part as follows: ''You are to determine from the evidence whether or not at the time of the issuance of said receipt, or prior thereto, it was agreed between Ellis & Church and plaintiff that stock of the Western Trust Company was to be delivered, and what the arrangement was between said parties, as to the delivery

of stock, whether of the Western Trust Company or the Northern Investment Company.'' Another instruction requested by defendants and given by the court was to the effect that if the jury found that the right to place plaintiff's subscription in either the Northern Investment Company or the Western Trust Company was in Ellis & Church, and they elected the Northern Investment Company, the verdict should be for defendants. These requested instructions were all along the same lines as those given at the request of plaintiff on this branch of the case, and show the theory upon which all the parties proceeded on the trial of the cause. Defendants are not at liberty to complain here of action by the trial court which was entirely in accord with their own requests. The point here sought to be made in this regard is based entirely on instructions given to the jury, no objection having been made by defendants, so far as appears, to the introduction of any of the evidence bearing on the question.

The evidence without conflict shows that all of the Western Trust Company stock had been subscribed for prior to the time of plaintiff's subscription, and that at no time thereafter could such company have accepted the subscription of plaintiff or delivered him any stock thereon. The company's stock had been fully subscribed for. Plaintiff's contract was simply to take stock from the company as an original subscriber. If by reason of his election his subscription was for Western Trust Company's stock, as the jury has in effect found, and the stock of that company had then been fully subscribed for by others, he could not be compelled to accept from others, in satisfaction of his rights under such contract, any stock that had been subscribed for by, and issued to other persons, and that was then owned by other persons. Under such circumstances it appears to be entirely immaterial whether Mr. Ellis or the president of the Northern Investment Company, at any time tendered to plaintiff stock of the kind above described, owned by them, in lieu of the original Northern Investment Company's stock for which it was claimed that he had subscribed, and it follows that instruction H given by the court on its own motion, which is the instruction most seriously complained of by defendants, was not erroneous.

In view of what we have said, we find no prejudicial error of which defendants may here be heard to complain in the action of the trial court in regard to any other instruction.

There is no other matter requiring notice.

The judgment and order denying a new trial are affirmed.