[Civ. No. 6885. Second Appellate District, Division One.—December 21, 1931.]

HAL CHASE, Respondent, v. SOUTHERN PACIFIC COMPANY (a Corporation), Appellant.

W. I. Gilbert for Appellant.

Bertrand J. Wellman and Leland J. Allen for Respondent.

YORK, J.—This is an appeal from a judgment for damages awarded plaintiff, arising out of injuries alleged to have been sustained by him when he was struck by a car of defendant corporation, which was being operated in a switching movement. Plaintiff was employed as a watchman of the property of the Pioneer Paper Company, over whose property a private railroad track and switch were established and maintained for the purpose of receiving and shipping its product. Gates were located at the entrance of the track upon said property, which were secured by two locks, one of which was placed and kept on the gates by the Pioneer Paper Company and the other by the defend-

ant Southern Pacific Company. On December 30, 1927, at the hour of 5:30 o'clock or thereabouts, the plaintiff, together with one Moriarity, was engaged in attaching to the gate the Pioneer Paper Company's lock. While so engaged, appellant switched a box-car into the Pioneer Paper Company's yard, striking the plaintiff and injuring him. The car was not accompanied by a trainman or yardman or any light.

The jury brought in a verdict in favor of the plaintiff for the sum of $8,500, whereupon defendant made a motion for a new trial. This motion was denied, provided that the plaintiff should file—within ten days from the date of the order—his written consent to reduce the judgment from $8,500 to $6,000. Plaintiff filed his consent to such reduction in the amount of the judgment, and defendant now appeals to this court from such judgment and the whole thereof.

Respondent alleged, and the jury evidently found, that he was injured through the negligent switching operations of the appellant and its employees, in that he was given no warning of the approach of the switched box-car. As a defense to the action appellant alleged contributory negligence on the part of the respondent, and now contends:

First: That the evidence is insufficient to sustain negligence on the part of appellant or its employees;

Second: That the respondent was guilty of contributory negligence as a matter of law;

Third: That the trial court erroneously instructed the jury;

Fourth: That the damages allowed are excessive;

Fifth: That the trial court erred in refusing to grant a new trial.

█ We have carefully examined the record in this case, and we are of the opinion that there was sufficient evidence to prove that appellant was guilty of negligence, in that its employees shunted or switched the empty box-car, across a public street and into the yard of the Pioneer Paper Company, after darkness had fallen, without giving any warning of its approach by means of placing a light thereon or of placing a trainman or yardman on the front thereof, as required by rule 103–A of appellant company. █ The companion of the injured man, who was facing the direction from

which the car came, testified that he did not see the car until it was within eight or ten feet of him and respondent, and that the car was moving at a rate of fifteen miles per hour; too late for his warning to benefit the respondent.

As to contributory negligence, the evidence is sufficient to support the verdict.

In support of its third point, appellant contends that the trial court erroneously instructed the jury as follows (Trans., fol. 429) : "In determining whether or not the plaintiff was guilty of contributory negligence, you should endeavor, *as nearly as you can, to view the situation as it appeared to him before he was injured.* After an occurrence, it is often seen how it could have been avoided, *but the facts should be viewed from the standpoint of a workman of the class to which plaintiff belonged, rather than as they might appear to you now who may be unaccustomed to performing similar work or to work in similar places.*" Appellant, in connection with this instruction, claims that the duty is at all times imposed upon the jury to judge and determine the negligence of a person *by that standard of care which would be exercised by reasonable and prudent persons under like or similar circumstances.* The foregoing instruction should not have been given. It had a tendency to obscure the rule which elsewhere in the instructions was clearly stated, that the plaintiff was bound to use reasonable care to provide for his own safety. But the court also (Trans., fol. 449) instructed the jury that in operating its train, the defendant owed no greater duty to the plaintiff than the plaintiff owed to himself to prevent injury; also (fol. 458) that it was his duty, in the exercise of ordinary care which the law requires of those who place themselves upon railroad tracks, to look and listen for the purpose of seeing and hearing that which one may, in the exercise of ordinary care, see and hear. In view of these and other given instructions of similar tenor, the foregoing quoted instruction against which counsel for appellant addresses his argument, becomes of slight relative importance. The instructions relating to plaintiff's duty in the premises were, as a whole, expressive of the defendant's own theory of the case. There was no judicial error.

Further, appellant takes exception to the italicized portion of the following instruction given by the trial

court to the jury (Trans., fol. 432): "In determining whether the plaintiff is guilty of contributory negligence, you will keep in mind that he had a right to assume the defendant would obey the law *and not be guilty of negligence*," contending that it was the province of the jury to determine whether or not appellant was guilty of negligence on the one hand, and whether or not respondent was guilty of contributory negligence on the other. In reply to this criticism it is sufficient to say that appellant should not be heard to object, in view of the fact that, as is pointed out by respondent, appellant itself requested, and the court gave, substantially the same instruction defining the right of appellant's trainmen to assume that respondent would obey the law and take the necessary precautions imposed by it upon him. (Trans., fol. 460.)

■ Appellant maintains that the damages allowed are excessive. This court is not at all convinced that the damages awarded to the plaintiff are so exorbitant "as to suggest, at first blush, passion or prejudice or corruption on the part of the jury." (*Hale* v. *San Bernardino Valley Traction Co.*, 156 Cal. 715 [106 Pac. 83, 84], and cited in *Nolen* v. *Engstrum Co.*, 175 Cal. 464, at 467 [166 Pac. 346].) It would therefore not be proper for us to interfere, especially in the face of the $2,500 reduction made by the trial court.

The judgment is affirmed.

Conrey, P. J., concurred.

HOUSER, J., Dissenting.—I dissent. My inability to agree with the conclusion reached by my associates depends upon the effect which in all probability resulted from the giving to the jury of the instruction that:

"In determining whether or not the plaintiff was guilty of contributory negligence, you should endeavor, as nearly as you can, to view the situation as it appeared to him before he was injured. After an occurrence, it is often seen how it could have been avoided, but the facts should be viewed from the standpoint of a workman of the class to which plaintiff belonged, rather than as they might appear to you now who may be unaccustomed to performing similar work or to work in similar places."

Referring to that part of the foregoing instruction by which the jury was told that in reaching its conclusion as to whether plaintiff was guilty of contributory negligence it should "view the situation as it appeared to *him* (plaintiff)",—in numerous cases in substance the law has been declared to be that:

" . . . *Plaintiff's best judgment is not the test of ordinary care,* and if his conduct involved a risk of injury which an ordinarily prudent person similarly situated would not incur, *he may be guilty of contributory negligence, even though he believed that he would escape injury. . . . "* (45 Cor. Jur. 953, and authorities there cited.)

The same thing is obviously true concerning that part of the instruction by which the jury was directed to determine whether plaintiff was guilty of contributory negligence "from the standpoint of a workman of the class to which plaintiff belonged". As it has been repeatedly held, negligence, whether of the plaintiff or the defendant, may not be tested by any such asserted rule. "The conduct must be compared to that of an assumed person of ordinary prudence and must be considered with relation to all the circumstances attending the occasion which might reasonably be taken into consideration by a person of ordinary prudence in determining what his conduct should be." (*Scott* v. *San Bernardino Valley Traction Co.,* 152 Cal. 604, 606 [93 Pac. 677, 678].)

Although by another instruction given to the jury the term "negligence" was defined and the rule of law therein declared that "the defendant railroad company was required to exercise reasonable care in the operation of the movement of the car in question", nowhere, either in that or in any other instruction, was the jury informed either as to the definition of contributory negligence on the part of plaintiff, or as to what constituted reasonable care either on his part to avoid injury to himself, or on the part of defendant to prevent the happening of the accident. The only direct guide which the jury had in its attempt to determine whether plaintiff was guilty of contributory negligence, or whether he exercised reasonable care to prevent his being injured, was the declaration by the trial court that the jury should "take the view of the situation as it appeared to *him* (plaintiff) before he was injured"; and that "*after*

the occurrence . . . the facts should be viewed from the standpoint of a workman of the class to which plaintiff belonged''. It is true that the trial court also instructed the jury that ''the defendant owed no greater duty to the plaintiff than the plaintiff owed to himself to prevent injury''; but certainly such an instruction in itself conveyed no information as to contributory negligence or as to the particular care which plaintiff was legally bound to exercise in the premises. Nor did the declaration by the trial court that ''it was his duty, in the exercise of ordinary care which the law requires of those who place themselves upon railroad tracks, to look and listen for the purpose of seeing and hearing that which one may, in the exercise of ordinary care, see and hear'', have the effect of giving to the jury the specific legal information which the defendant was entitled to have the jury receive relative to what constituted ''ordinary care'' on the part of either plaintiff or the defendant, or as to what was meant by the term ''contributory negligence''. If all that was necessary was that plaintiff use ordinary care ''as it appeared to *him*'', it is clear that contributory negligence would have been confined to most narrow and restricted limits, and would not have been regulated by those legal principles which in reality define and circumscribe the condition or situation in question. Furthermore, if in endeavoring to determine whether plaintiff had been guilty of contributory negligence, the jury was legally authorized to view the facts ''from the standpoint of a workman of the class to which plaintiff belonged'', it is likewise apparent that the well-established rule which recognizes that the conduct of the plaintiff shall be measured by what in similar circumstances a reasonably prudent person would have done, might have been and probably would have been violated. Other than by the bald admonition that ''ordinary'' care should be exercised by plaintiff *''to look and listen''*, by no instruction was the jury told what was required of him. As an illustration of the effect and the consequence which might ensue from the adoption of a rule such as was given to the jury, ''it might have appeared'' to *plaintiff*, or to ''a workman of the class to which plaintiff belonged'', that on beginning his work on the railroad track all the ''ordinary'' care on his part which the law required was that he casually glance once

in the general direction from which a switched car might be expected, and at the same time, or possibly later, that he carelessly listen for such car; and thereafter (in accordance with such rule), on the happening of an accident, he would be immune from the charge of contributory negligence on his part. It is a fact, as shown by the record herein, that in no instruction or instructions other than those to which attention has been directed was the jury given even the slightest direction or rule by which the care to be exercised by plaintiff should be determined or measured; and by reason, as well as by all the authorities, the questioned instruction was clearly erroneous.

It is plain that the most that may be claimed from the situation is that the questioned instruction was at variance or in conflict with, and contradictory of, either the express or the inferential declarations of the law as contained in the other instructions which were given by the trial court to the jury, and to which hereinbefore attention has been directed; and in effect it is urged that the conceded error was cured by such other instructions. In general, it is not doubted that an ordinary error in an instruction may be cured, if, when the entire body of instructions is considered, the law be accurately stated therein. But in that connection, as succinctly stated in 24 California Jurisprudence, 867, where many authorities are cited in its support, the correct rule is that "an erroneous statement to the jury is not ordinarily cured by contradictory instructions which correctly state the law, for in such case it is impossible to determine which of the conflicting rules was followed by the jury".

Declarations by the Supreme Court of this state in each of the following negligence cases are illustrative of the point, to wit:

In *Pierce* v. *United Gas & Elec. Co.*, 161 Cal. 176, 185 [118 Pac. 700, 704], the following language occurs:

" . . . It is true that other instructions were given at the request of defendant that stated the law in these respects as favorably to defendant as was warranted, if not more favorably. But the giving of these other instructions simply produced a clear conflict in the instructions given the jury by the court, and it is impossible for us to say which instruc-

tion the jury followed in arriving at a verdict in favor of the plaintiff.''

In *Rathbun* v. *White,* 157 Cal. 248, 253 [107 Pac. 309, 311], it is said:

'' . . . Nor was the vice of the instruction cured by the general direction that plaintiff must establish every material allegation of the complaint by a preponderance of the testimony. This produced, at most, a hopeless conflict between the various instructions. The different declarations of the court were not capable of being harmonized. In such case it is impossible to determine which of the conflicting rules presented to them was followed by the jury and the error in any of the instructions must be deemed prejudicial.'' (Citing authorities.)

The facts in the case of *Fogarty* v. *Southern Pac. Co.,* 151 Cal. 785, 794 [91 Pac. 650, 652], like those in the instant case, involved a personal injury received in the course of switching a railroad car. In the cited case it appears that, as stated in one set of instructions given by the trial court to the jury, the law thus declared was in direct conflict with that contained in other instructions likewise given to the jury. Relative thereto, in part the Supreme Court expressed itself as follows:

'' . . . It does not assist that the trial court in two other instructions charged the jury in direct conflict with the instructions above referred to, and in terms too favorable to defendant. The conflicting statements of the court in this regard were each equally positive and plain, and no one can tell which the jury followed. It follows that a reversal must be had on account of these instructions.''

In the case of *Sappenfield* v. *Main St. & A. P. R. R. Co.,* 91 Cal. 48, 59 [27 Pac. 590, 592], wherein it appears that instructions inconsistent one with the other were given to the jury, the Supreme Court declared:

''The error in giving the foregoing instruction was not obviated by the instruction subsequently given at the instance of the defendant, wherein the law applicable to the case was properly presented. The jury could not determine which of the two propositions was correct. They were bound to accept all the propositions that the court instructed them upon as a correct statement of the law by which they were to be guided, and if the several instructions are in-

consistent or contradictory, it is impossible to tell which was adopted by them in reaching their verdict." (Citing authorities.)

Many other authorities from the appellate tribunals of this state attest the correctness of the rule to which attention has been directed; but it is deemed unnecessary to quote from them.

To my mind it appears conclusive that the instruction under consideration in the instant case was not only prejudicially erroneous, but that its effect was not cured by either or all of the other instructions which the trial court gave to the jury. It should follow that the judgment should be reversed.

A petition for a rehearing of the cause was denied by the District Court of Appeal on January 19, 1932, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 18, 1932.